## Thomas Whitledge *v.* James Kenny, heir-at-law of Joseph Kenny.

### *In Chancery.*

This suit was brought in the supreme court for the district of Kentucky, and, on the erection of the district into the state of Kentucky, removed for trial to the court of appeals.

Joseph Kenny, on the 26th day of April, in the year 1780, obtained from the court of commissioners for the district of Kentucky the following certificate, to-wit:

"Joseph Kenny, by James Kenny, this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of raising a crop of corn in the country in the year 1776, lying on Cooper's run, waters of Licking creek, below and adjoining William McGee's land, and on both sides of the said run. Satisfactory proof being made to the court, they are of opinion that the said Kenny has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 21st day of June, in the same year, entered his certificate for settlement with the county surveyor, in the following words, to-wit:

"Joseph Kenny enters 400 acres, by virtue of a certificate, etc., lying on Cooper's run, waters of Licking creek, below and adjoining William McGee's land, and on both sides of the said run."

The said Joseph Kenny, after the making the said entry, departed this life, leaving the complainant his heir-at-law, who alleged that he was prevented from surveying the said settlement by Thomas Whitledge, the defendant, who having on the 28th day of December, in the year 1779, obtained from the commissioners the following certificate, to-wit:

"Thomas Whitledge, by Richard Henderson, this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, lying on the middle branch of Cooper's run, waters of Licking creek, at a small spring with the two first letters of John Townshend's name cut on a tree, by the said Whitledge settling

and raising a crop of corn in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said Whitledge has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 5th day of February, in the year 1780, entered his certificate for settlement with the county surveyor in the following words, to-wit :

"Thomas Whitledge enters 400 acres by virtue of a certificate, etc., lying on the middle branch of Cooper's run, waters of Licking at a small spring, with the two first letters of John Townshend's name cut on a tree."

And his pre-emption warrant on the 10th day of January 1783, in the following words to-wit :

"Thomas Whitledge enters his pre-emption warrant, No. 723, of 1,000 acres adjoining his settlement on the middle fork of Cooper's run, waters of Licking creek, beginning at the east corner of his north line of his settlement, and running north 60 east, 253 poles ; thence north 30 west, 334 poles ; thence at right angles south 60 west, 668 poles ; thence south 30 east, 334 poles to the beginning, to contain the quantity."

Had surveyed his settlement and pre-emption in the manner described on the connected plat, and that the said Whitledge in surveying the pre-emption had taken in a considerable part of the land he claimed as heir-at-law of the said Joseph, by virtue of his certificate for settlement and entry thereon with the surveyor, and that he had also included about 200 acres of land in the said survey more than his quantity.

The defendant stated in his answer to an amendment to the bill of the complainant, that he made his pre-emption entry in strict conformity to conditional lines agreed upon between him and the original improvers ; between whom it was agreed that the claim should be bounded on the side now claimed by the complainant as he has since surveyed. And that he conceived himself bound by that agreement—and that no person who afterward located such a claim as the complainant's, had a right so to do, as to interfere with that agreement. But stated that he did not admit that the complainant's claim was so located as to occasion any interference.

The annexed connected plat, No. 34, was returned in this cause, of which the following is an explanation :

Whitledge *v.* Kenny.

A B C D, that part of the complainant's settlement of 400 acres not given up to other claims, containing 237½ acres. The dotted lines and the lines B C and C D include the land given up to Grotz' claim and Robert Whitledge's. E F G H, the defendant's settlement according to survey, containing 490 acres. I K L M, and binding on the settlement on three sides, the defendant's pre-emption according to survey, containing 1,110 acres. 1 2 3 4, the defendant's settlement, as the complainant directed it to be laid down, including the spring and tree marked J T in the center. 5 6 7 8, pre-emption do. D N O P, William McGee's settlement according to survey, containing 466 acres. O P Q R, pre-emption do. C S T U, Grotz', now Col. Edwards' settlement, according to survey. S T U V W X, part of pre-emption do. do. D Y Z &, Robert Whitledge's settlement according to survey. *a*, William McGee's cave spring; *b*, William McGee's upper spring; *c*, Grotz' spring, now Col. Edwards'; *d*, Thomas Whitledge's spring and improvement, where he now lives; *e*, and the tree, represent the spring at

which the tree stood that was marked with the two first letters of John Townshend's name.

The following facts were agreed to by the parties, to-wit:

*First.* That the place which by the connected plat is designated by the letter *a*, and called in the explanatory notes to the said plat, William McGee's cave spring, is the improvement which was claimed by the said McGee before the commissioners, and for which they granted him a right of settlement and pre-emption.

*Second.* That the place which by the connected plat is designated by the letter *c*, and called in the explanatory notes to said plat, Grotz' spring, now Col. John Edwards'; is the improvement which was claimed by Jacob Grotz, and proven to be his before the commissioners, and for which they granted a right of settlement and pre-emption; and is the same place where Col. John Edwards now resides.

*Third.* That the water course laid down in the said connected plat, and which passes by the place called therein Grotz' spring, now Col. John Edwards', was on the 22d day of November, 1779, and has been ever since called, and notoriously known by the name of Cooper's run.

*Fourth.* That the place which by the connected plat is designated by a tree and the letter *e*, and called by the explanatory notes to the said plat the spring where the tree stood that was marked with the two first letters of John Townshend's name, is the spring which was claimed by the defendant before the commissioners, and for which they granted him the right of settlement and pre-emption in the bill mentioned.

This cause was first argued at the October term of the court of appeals, in the year 1794.

BRECKINRIDGE for complainant.—The complainant must show that he has a good claim to the land in dispute.

The first object of description contained in the complainant's certificate and entry, is the call for William McGee's land, " below and adjoining William McGee's land." McGee calls for three things.

*First.* For Cooper's run. That he does lie on Cooper's run, is shown by the plat, and proved by his survey.

*Secondly.* About two miles above Grotz' settlement.

It is 570 poles from the improvement in McGee's settlement to Grotz', which is admitted by the second fact to be at *c*, which is 75 poles less than the distance, and this by a straight line and not the meanders, although the call is above.

*Thirdly.* To include his improvement.

The situation of this improvement is admitted by the first fact to be at *a.*

The situation of McGee's land is admitted by Henderson, who as agent for the defendant laid his claim before the commissioners and obtained his certificate, as appears by Robert Whitledge's certificate, which he also laid in ; the calls of which are to lie on Cooper's run, and to adjoin McGee on the east.

McGee's land being identified, the next inquiry is, has the complainant surveyed right ?

McGee's certificate and entry are such that a conflicting claim would probably have made him center his improvement. But admitting that he is to do so, and run to the cardinal points, it will throw the claim of the complainant ten poles further up the branch, and on the defendant.

The complainant calls to lie below and adjoining William McGee's land; he does so.

" On both sides of Cooper's run ; he does so.

An exact quantity of his land is on each side of the branch, agreeably to the case of *Isaacs* v. *Willis,* determined in the old supreme court.

The complainant could be placed in no position more inoffensive to the defendant, for if he was to take the run in the middle, and make his line parallel with the general course, he would take more land from the defendant.

I come now to examine the claim of the defendant, which like that of the complainant, is also a village right.

The date can make no difference, when the same spot is not in contest. The defendant both in his certificate, and in his entry of the settlement with the surveyor, calls for the spring at which the two first letters of John Townshend's name was cut on a tree, and this object must be centered, and the lines of the survey run to the cardinal points.

In April and June, 1780, when the complainant obtained his certificate and made his entry, he was authorized to suppose that this improvement would have been centered, and might have entered so as to approach as near as 127 poles from the improvement.

If the defendant could not have affected the claim of the complainant, by an interference of that part of his settlement which lies out of the square around the spring and tree J. T., he certainly never can with his pre-emption which was entered in January,

1783, two years and a half after the plaintiff's settlement was entered.

A common treasury warrant, much more the plaintiff's settlement, if entered with the same precision, would have taken preference of the defendant's pre-emption. See the rules of the old supreme court.

It does not appear by his certificate of survey or otherwise, that he was bounded upon two sides of his settlement, yet he has borne too far toward the complainant, and has included within 37½ acres as much surplus land as he has left the defendant altogether.

NICHOLAS and MURRAY for defendant.

MURRAY.—The first question which arises in this cause is, has the complainant surveyed agreeably to his locations? and in making this inquiry, we must first inquire whether McGee himself has done so. McGee ought to have surveyed in a square around his improvement, with the lines running to the cardinal points, and his pre-emption on all sides of his settlement.

The complainant can not adjoin McGee on the north, because a part of McGee's claim will lie lower down the run than a part of his settlement, and by his call he ought to adjoin McGee's lower part, whether it is his settlement or pre-emption. The case of *Isaacs* v. *Willis*, does not contradict this position.

NICHOLAS.—The first inquiry in this cause is, to what land has the complainant a right, supposing the defendant's claim not to be superior to his?

The call of the complainant's locations is for Cooper's run, below and adjoining the land of William McGee.

The inquiry is material how McGee has surveyed; certainly not agreeably to certificate. His improvement is the only thing that can give any certainty to his claim.

At the time the complainant's certificate was granted, McGee's claim to a pre-emption of 1,000 acres depended entirely upon his certificate, and for the same reason that his improvement ought to be centered in his settlement survey, that is, that he made no special location of it, his pre-emption ought to adjoin his settlement on every side.

The whole 1,400 acres ought to be surveyed in a square form, the lines running to the cardinal points, and the improvement being the center of the survey. Then the complainant ought to ad-

Whitledge *v.* Kenny.

join the lowest part of McGee's settlement and pre-emption. Mc-Gee calls to lie on Cooper's run, and the complainant to lie on Cooper's run below the land of McGee; therefore he ought to lie lower down than any part of McGee's land. See the cause of *Swearingem* v. *Briscoe.*

The defendant's claim was first granted by the commissioners, and is superior both pre-emption as well as settlement to the complainant's. But it is said he ought to have surveyed in a square; he has an excuse for not doing so, the conditional line agreed upon by the old improvers.

Thomas Whitledge made corn at the spring at which he lives, and therefore is an actual settler, and might make a conditional line. It is said the defendant has two hundred acres of surplus, that is true, but it is true also, that he has two other disputes respecting the land, and if you take the surplus from him to give it to the complainant who has no right, you may with equal propriety take it from him also in the other disputes. But you can never take the surplus unless you leave the true quantity according to location. The case of *Isaacs* v. *Willis* does not apply, for there, there was no call to lie below on the run.

By THE COURT.—In this cause two questions seem necessary.

*First.* Where ought the lower boundary of William McGee's land called for in the complainant's location of his settlement and pre-emption with the commissioners, to have been fixed?

*Secondly.* In what manner ought the complainant's settlement to have been surveyed?

On the first question, it appearing that McGee located his settlement with the commissioners to include the cave spring, and his pre-emption to adjoin his settlement, it seems to the court that the settlement ought to have been laid off so as to include the spring in the center of a square, running to the cardinal points; but it does not seem that the location of his pre-emption is equally descriptive, or that the expression to adjoin his settlement is of the same import as to include his settlement, or to adjoin it on all its sides; but it is too vague to have been regarded by the complainant, or to bind him when he made his location with the commissioners.

Therefore the court is of opinion, that the complainant intended to adjoin McGee's settlement, and that his location ought to be so taken.

As to the second question, the court is of opinion, that the

location of the complainant's pre-emption with the commissioners being in like manner vague, that the south boundary of his settlement, ought to have run with the north boundary of McGee's settlement, and with the course thereof as above ascertained, and that it ought to have been laid off in a square, so as to include an equal quantity of land on each side of Cooper's run. Order of survey, etc.

At the pronouncing of the said decree, the attorneys for the defendant, under the 34th rule of the court, did certify that they did verily think there was error in the said decree in the following instances, to-wit:

*First.* That the court by the said decree had given their opinion that the complainant intended to adjoin McGee's settlement, whereas the call of the certificate of the-complainant was to adjoin McGee's land, and the said McGee was entitled at the time of granting the said certificate to the complainant, to a settlement of 400 acres of land, and the pre-emption of 1,000 acres adjoining thereto; and had also directed that his claim should be laid off agreeably to that opinion.

*Second.* That the court had directed the complainant's claim to be laid off in a square adjoining the northern boundary, so as to include an equal quantity of land on each side of the creek, whereas the call of the complainant's said certificate was to adjoin the said McGee's land below, and the lower boundary of the said McGee's land was the eastern; admitting that the complainant ought to be considered as having called to adjoin McGee's settlement only, instead of his land. McGee's settlement from his certificate with the commissioners ought to be laid down so as to lie on Cooper's run. Whereas by the decree of the court it will be placed on a fork of Cooper's run, and no part of it will lie on Cooper's run, and the placing of McGee's settlement as it ought to be on Cooper's run, will show that the complainant ought to have adjoined his eastern, and not his northern boundary."

And the court directed the cause to be reheard as to the errors assigned at the next term.

At which time it was argued on the assigned errors.

NICHOLAS for defendant.—The first question which arises is where ought the lower boundary of William McGee's land called called for in the complainant's location of his settlement and pre-emption with the commissioners, to be fixed?

To understand this question we ought to attend to the facts respecting McGee's land.

Whitledge *v.* Kenny.

On the 22d of November, 1779, Jacob Grotz' settlement and pre-emption lying on Cooper's run, for improving the same, and raising corn in 1776, the settlement to include his improvement, and the pre-emption adjoining. .

On the 21st of December, 1779, William McGee obtained his settlement and pre-emption, lying on Cooper's run, about two miles above Jacob Grotz' settlement, by improving the same and raising corn in 1776, the settlement of 400 acres to include his improvement, and the pre-emption adjoining.

February 2d, 1780, McGee entered his settlement of 400 acres, lying on Cooper's run, about two miles above Grotz' settlement.

February 26th, 1780, Kenny obtained a settlement and pre-emption, lying on Cooper's run, on the upper side. On the 6th of January, 1783, Kenny entered his pre-emption adjoining his settlement on Cooper's run on the lower side.

On the facts the question arises, what construction will the law put on Kenny's certificate to join McGee's land? Shall it be that he ought to adjoin his settlement only, or both settlement and pre-emption?

An attentive consideration of the situation of McGee and Kenny and their claims will throw great light on this subject; but it is the situation of the parties and their claims at the time that Kenny's certificate, that is to serve as the proper rule by which to explain the real meaning and intention of Kenny's certificate; and not subsequent events or things, that were not in his knowledge at that time—and therefore could have had no influence on his judgment. Let us suppose then, that this contest had taken place the day after Kenny had obtained his certificate, it would then have stood thus: McGee had obtained his claim for both settlement and pre-emption, before Kenny put in his claim; and McGee's claim was to include his improvement, Kenny's claim was founded on his raising corn, without any improvement on the land.

And after McGee had obtained his settlement and pre-emption, Kenny puts in his claim to adjoin McGee's land below, without calling for any object to be included in his claim, which could fix it either higher or lower on Cooper's run: his situation on that run was to depend entirely on, and be governed by the boundary of McGee's land, which he calls to join below.

If Kenny had the day after he obtained his certificate contended that he had a right, and intended to adjoin McGee's settlement only, would it not have been thought the strangest claim that

could have been made. He called to adjoin McGee's land; this evidently means the land granted McGee by the commissioners; this showed a knowledge of, and was a reference to that certificate, and is therefore an acknowledgment of notice of every thing contained in that certificate. See 2 P. Williams, 434. But the certificate was for both settlement and pre-emption, therefore when he called to adjoin McGee's land, the intention must have been to join the land included by both.

Suppose McGee had been asked, after he obtained his certificate, how much land he got from the commissioners? Would he not have said 1,400 acres, or if he had devised, or sold the land granted him by the commissioners, would it have included the settlement, or both settlement and pre-emption? Ask the same question of every claimant, and if all would have returned the same answer, it must be right.

Kenny's intention must have been to join both settlement and pre-emption, because if it was his intention to join his settlement only, he must when he obtained his certificate have meant either to contend, and claim with McGee's pre-emption, or lose and give up so much of his claim as interfered with McGee's pre-emption, neither of which could have been his intention. For when one claim calls to join another, it admits the superiority of the claim it calls to adjoin, and because no one can be supposed to intend to locate his claim in such a manner as will certainly destroy a great part of it, as would evidently be the case if he meant to adjoin the settlement only, when he must have run through the pre-emption, which was part of McGee's land, to get at the settlement.

These arguments will carry conviction in all cases, where one claimant of a settlement and pre-emption calls to join the lands of another, but it is still stronger in this case, because Kenny had no improvement of any kind, his distance and situation up Cooper's run was to be fixed by McGee's land, therefore he manifestly intended to give way to the whole of his claim as then granted; this is very different from the case of two actual settlers, with improvements; each calling to include his own improvement and considering that improvement as his principal call; there, if there was not room for both claims, there might be some foundation for a dispute about the land between their improvements; but here, where Kenny has nothing to claim by, but the boundary of McGee's land, he must be considered as calling for that, which is the boundary of his whole claim of land.

Whitledge *v.* Kenny.

By the call to join McGee's land, Kenny either meant to join both settlement and pre-emption, or one of them only ; if he meant to join both, the decree has gone upon a mistaken idea; if he meant to join one of them only, his certificate is void for uncertainty, in not mentioning which of them it was he intended to join. His land, a common expression in general use, when applied to both settlement and pre-emption ; when the intention was to join or call for one of them in particular, the certificate was so expressed. See commissioners books generally. See William McGee's certificate, which calls to lie two miles from Grotz' settlement, when certificate for both settlement and pre-emption had then been granted. This distinction is the stronger in this case, because as William McGee's was the claim which Kenny called for, he must have been acquainted with McGee's certificate, and therefore would have used the same distinction between the settlement and pre-emption, if he had intended it, as McGee did ; Robert Whitledge also calls to join McGee's land on the east, and has surveyed so as to adjoin both settlement and pre-emption, and yet Kenny as appears by the plat gives up to him.

¹ The improvement now being placed on the settlement, is no proof that Kenny intended to join the settlement only, for it was then a commonly received opinion, that it was sufficient to include the improvement in either settlement or pre-emption ; therefore as his land was to include his improvement, and Kenny supposed the improvement might be included in either settlement or pre-emption, it·is a strong evidence that by *his land* he meant both settlement and pre-emption.

There can be but one right way of construing any instrument whatever. Henry Blackstone, 472. Therefore, there must be the same construction put upon all certificates which call for pre-emptions to adjoin settlements without saying how, which is the case of all of them ; that call can not be sufficient for the owner of the pre-emption, and not sufficient for him who calls to adjoin the claim of the other ; the court can not say, that by the true construction of his certificate, he ought to join the settlement only, in a contest with Whitledge, and that he shall join both settlement and pre-emption in a contest with McGee. Suppose Kenny had not surveyed, and had brought suit against Whitledge and McGee, could the court have said in the same suit, that as far as McGee was concerned, he should have joined both his settlement and pre-emption, but as far as Whitledge was concerned, that he should

join the settlement only; or in other words, he ought to survey one claim depending on one certificate in two different places?

If the court could not have given such contrary decision, if in one suit, can they with more propriety do it in two?

And if these decisions would have been contradictory, and therefore improper, if two suits were depending, is this not as much so although one suit is only depending; as others might have existed in this case, and actually do exist in other cases depending on the same principle?

This doctrine would finally destroy all pre-emptions depending on settlements, because if the call to adjoin the settlement was too vague to give notice how it ought to adjoin it, it would be as much so in the case of the owner of the certificate as in that of a person collaterally interested in it; therefore if A has a certificate for a settlement and pre-emption, and B calls to adjoin A's land on every side, or if B C D and E call to adjoin A's land on different sides; instead of joining A's land they would be thrown into it, and instead of its being the best claim, as it certainly would be, he would lose ten-fourteenths of his land.

This doctrine will materially affect all the claims in the country, which call in this manner and have been surveyed. One certificate calls for another, a treasury warrant for the second certificate, and other treasury warrants for the first treasury warrant, etc., both certificates and first treasury warrant would lose a great part of the land surveyed on them, and all the others would lose every foot, as being surveyed contrary to location, and, entirely off the ground.

The common acceptation and understanding of all persons concerned in these claims show, that from the time that the certificates were granted, both settlement and pre-emption belonged to the owner of the certificate; most of them were assigned in that state before a pre-emption warrant was taken out; but if the pre-emption did not then belong to the owner, the sale was void, though he afterwards acquired a right to it. See 2d Bac. Abr. 655. But these sales were confessedly good, because the law (Chan. Rev. 92) declares them to be assignable; and because upon them, pre-emption warrants were issued in the name of the assignee. If then, the sale was good of such a pre-emption, it was because it was his land when he sold, and if it was his land so as to justify a sale of it in that state; *a fortiori*, it was his land so as to justify a description given of it by that name, because a descrip-

tion though erroneous will frequently be sufficient to describe the land intended to be described. 4 Com. 165. Therefore the pre-emption must be considered as included in the call to adjoin McGee's land.

The statement used by the court serves to prove that the commissioners' certificate is always considered as the location of both settlement and pre-emption.

Suppose A has two treasury warrant entries, one for 400 acres on such a creek, the other for 1,000 acres adjoining; B enters 1,000 acres adjoining A's land below; must not B show how the 1,000 was to join A's land below; and if he was to join only one of them, whether it was the 400, or the 1,000, or lose his claim from the uncertainty, and would it be allowed to B to say, that he would join the 400 acres only, because it was not certain how the 1,000 ought to be laid off, and thus avail himself of the vagueness and uncertainty of his own call, and that to the prejudice of the real owner of the land; and if it would not be allowed in such a case how does this case differ from that in reason or principle?

No argument can be drawn from the distance between McGee's and Grotz' improvements, to show that Kenny intended to join their settlements only, because he was evidently mistaken in the distance, as there was not room for their three settlements on the creek, without allowing any land for Robert Whitledge, whose claim was also elder than Kenny's, and who Kenny now admits by his survey was entitled to part of the land between McGee and Grotz on the creek; indeed from the number of prior claims on the creek; from Kenny's having no improvement there to fix him to the place, it is evident that he was mistaken altogether in the extent of the country there, and now wants to get clear of the consequences of that mistake at the expense of others.

It has been already decided that upon such a call, the second claim shall join both settlement and pre-emption, and that the certificate is sufficiently certain to make good the claim to the pre-emption in the case of *Isaacs* v. *Willis*, which I shall observe on fully, presently.

The following are the objections to this doctrine by the court:

*First.* As McGee located his settlement to include his *improvement*, it seems to the court that the settlement ought to be laid off to include the spring in the center of a square, to the cardinal points.

This idea has now become familiar to us, from the repeated

decisions which have been given on it, and its having been carried into general use; but as it is relied on to justify this decree, it is necessary to search into its legal foundation, that we may apply the principles on which it is founded to other cases arising out of the land law; *for ubi eadem est ratio ibi idem est jus.*

The act (Chan. Rev. 93) directs that the commissioners should issue the certificate "describing as near as may be the particular location." From this act although it appears that the legislature intended to allow some degree of latitude in locating the settlement rights; still it meant that a certain degree of precision should be used in the doing of it; it was to be done as " near as may be." But will any man say that a certificate for a settlement which only calls to include an improvement, describes as nearly as may be, the location of the 400 acres? Might it not have said in what form the land should be laid off, and in what part of it the improvement should be placed? Certainly it might, and if it could and that with ease and certainty, it ought to have been done. But yet it has not been done; and notwithstanding it has been omitted, the court has said by a rule of its own making, that this claim shall be laid off in a square, including the improvement in the center, and running the lines to the cardinal points.

Again in the case of treasury warrants, the law (Chan. Rev. 95) directs, " that the location shall be made so specially and precisely, as that others may be enabled with certainty to locate other warrants on the adjacent residuum;" here all latitude in making of entries seems to be expressly excluded, but not one in one thousand of these entries has observed this precision, and of consequence if the law had been strictly adhered to, not only the whole of the settlements, but also, that proportion of the treasury warrants must have been declared void for the uncertainty; but to prevent this evil, the court has laid down a great number of rules for construing entries, which are to be resorted to, to determine how an entry ought to be surveyed, when it does not contain in itself that degree of certainty which the law requires.

Here let us pause, and inquire by what authority and under what principles the court did this: the law instead of authorizing this latitude of construction seems to forbid it; especially in the case of treasury warrants, where the utmost degree of certainty is required. But if the law had been adhered to, almost all the first claimants, both under certificates and treasury warrants, would have lost their lands; this would not only have been a great national

evil, but also have done injustice to thousands; therefore, upon principles of public policy, and to support so many claims, which otherwise would be lost, "*ut res magis valeat quam pereat*," the court invented and laid down certain rules of construction to be applied to, and observed in cases both of certificates and entries, where they were so vague, general, or indefinite, as to convey no precise and certain meaning; although by a reasonable construction, of them, and such a one' as people in general who read the entry would concur in putting on it, the real intention of the party might be discovered. So far as these rules do put a plain and natural construction on entries and certificates, they are manifestly right; because if a second locator could clearly make out the intention of the certificate or entry, he had that notice which it was intended he should have, as well as if it had been given in the most precise and positive terms.

But admitting that the propriety of these rules were at first doubtful, yet having been long established, adhered to in former decisions, and made the rule of settling thousands of disputes out of court, they ought now to be adhered to, otherwise all titles to landed property would be unhinged or lost, or some new rules must be adopted, which might finally appear liable to as many objections as those now in use.

Here it is necessary for us to observe, that all these rules are observed, equally, both in cases of certificates and entries, where the construction of them comes into question collaterally, as where they are the immediate objects of dispute; and this must inevitably be the case, because it would be an absurdity, that two contrary decisions should be given by the same court, as to the proper construction of any instrument whatever. This very decree is an example of this, for McGee is no party to this dispute, and although his certificate does not declare how his settlement ought to be run, yet the court has applied one of the general rules invented by them to determine it, so as to say how McGee ought to have surveyed, and another of its general rules to determine how Kenny ought to join McGee, after his settlement is laid down properly, how he should lie on the different sides of the creek, and what form his land should be put in, as to all which Kenny's certificate was totally silent, except that it was to be on the lower side; so that it is manifest that Kenny could have obtained no decree in this cause, unless the court had first from their rules

(not his certificate) determined that McGee ought to have surveyed in a square, etc. And secondly, that Kenny ought to be laid down, to adjoin the whole length of McGee's line when so laid down, etc. Therefore, the decree in his favor is not only founded on an implication, but also on an implication raised upon another implication.

*Second.* But it does not seem that the location of his pre-emption is equally descriptive, or that the expression to adjoin his settlement is of the same import as to include his settlement, or to adjoin it on all its sides.

It is certain that a call to adjoin, is not as certain as it might have been made, but it is as descriptive as the call of the settlement to include the improvement; there are more different ways in which the improvement might have been included in the settlement, than there are in which the pre-emption could be made to adjoin the settlement. I have never seen a certificate which called for the pre-emption to include the settlement, if had, it would have reduced the claim to 1,000 acres.

The settlement calls to include the improvement only, made it absolutely necessary for the court to establish some rule how it must be included, so also does the call of the pre-emption to adjoin the settlement: the power of the court is the same in both, exists in both or in neither, the necessity is the same in both, the importance greater in the case of pre-emption, because the loss to individuals and the contests would be greater from the superior quantity of the pre-emption to the settlement.

The difficulty in fixing the rule for laying off the pre-emption is less than that of fixing the settlement; indeed the very rule established for fixing the settlement, does from the same reason fix the pre-emption also, the fixing it to adjoin the settlement all around, is not only consonant to the rule established for settlements, but is also the most natural, and the most to the owner's interest, from the compact shape it gives his land, and therefore should be the one which it ought to be presumed he intended to give it.

There is no act of assembly, principle of law or reason, which can make it more necessary for the certificate to contain greater precision, as to the pre-emption, than as to the settlement. Indeed the act of assembly requires it less in the case of a pre-emption than in that of a settlement. Chan. Rev. 93.

As it is equally proper and necessary, to establish some general rule as to the pre-emptions, as in the cases of settlements or treas-

Whitledge *v.* Kenny.

ury warrants, so that rule when established, must in all those different cases, equally have relation back to the granting the certificate, or making the entry, because the rule is to supply the want of an express declaration of the intention, and is to serve as a sufficient evidence of that intention, and therefore causes that construction to be put upon the certificate or entry, which would have been, if the intention had been explicitly declared; thus in this decree although the rule of surveying the settlement in a square, etc., has been established since the granting of the certificate, the court applies that rule to the certificate, to show what Kenny's meaning was when he called to adjoin McGee; by a parity of reasoning, therefore, whatever rule is established for laying down the pre-emption adjoining the settlement (and some rule must from the necessity of the case be established), that rule must operate on the construction of McGee's certificate, and Kenny must adjoin the pre-emption, when laid down agreeably to that rule.

Such a rule is more particularly necessary and proper in the case of a pre-emption, than of a settlement, because as I have already shown, the law did not require a special location in the case of a pre-emption, as it did in the case of a settlement; therefore there was no omission of duty in the case of a pre-emption as there was in the case of a settlement, and if it had been attempted to make a special location of the pre-emption with the commissoners, it is more than probable it would have been refused, as the law did not declare it necessary; and as the court has supplied two defects in McGee's and Kenny's certificate to enable them to place their settlement rights, they ought at least to supply one in McGee's certificate, to determine how his pre-emption ought to be placed, and not suffer rules established by themselves to operate in a two-fold degree against Whitledge; and refuse to apply one where it is as essentially necessary, when it would operate in his favor, and when it was in conformity to the real intention of Kenny at the time he obtained his certificate.

*Third.* The call in McGee's certificate for his pre-emption to adjoin his settlement, is too vague to have been regarded by the complainant, or to bind him when he made his location with the commissioners.

Who is it that relies on McGee's certificate to support his claim, Kenny or Whitledge?

And on whom is it incumbent to show such a degree of certainty

in that certificate, as will be sufficient to support his claim? if certainty in a call is essential to the goodness of a claim, and if the vagueness of a call is to operate to the prejudice of either party, it must be to his who makes use of it. If what was McGee's land depended on his certificate, and if from the vagueness of that certificate, it was uncertain whether his land consisted of 400 or 1,400 acres, or if it was 1,400 acres it was uncertain how the 1,000 was to be surveyed; it must certainly operate to the prejudice of Kenny who calls to adjoin McGee's land, and who from the uncertainty of McGee's.claim, can not show certainly what it amounts to, or how it is.bounded; and not of Whitledge whose legal right can never be taken from him, but by Kenny's establishing his claim with certainty and precision.

It is entirely a new doctrine that the vagueness of a claim which is called for by a second claim, can operate in favor of the second; it may destroy the second but can not save it; therefore, every argument which goes to prove that McGee's claim was vague or uncertain either in its amount or situation must go to the destruction of Kenny's claim, which can not be supported, until the exact quantity of McGee's land, which he calls to adjoin, can be ascertained.

All those objections are controverted and overruled by the decision in the case, *Isaacs* v. *Willis.*

This was a suit brought by Isaacs on his pre-emption right against Willis on an entry on a military warrant.

Isaacs' certificate was granted February 8, 1780, his pre-emption entry made 22d of December, 1781, and amended 27th of June, 1786; Willis' entry was made the 24th of April, 1780, and amended 26th of June, 1786, so that Willis' original entry as well as his amendment, were elder than Isaacs' entry and amendment; therefore, Isaacs' claim against Willis under his pre-emption rested on his certificate with the commissioners; that was for a settlement of 400 acres "lying on both sides of Wilson's run, adjoining the lands of Thomas Wilson below, and to include his improvement, and a pre-emption warrant of 1,000 acres adjoining.

Isaacs was also plaintiff in the caveat, and of consequence the only question was, to what land Isaacs was entitled under his certificate, for it was immaterial how Willis held it, unless Isaacs showed a better right to it. The judgment of the court evidently views it in this light.

By this decree several principles are established.

*First.* That by a call to adjoin the land of Wilson, Isaacs was to adjoin both settlement and pre-emption, *his lands says* the decree. See Wilson's corner in the plat, and Isaacs being bounded by that line both settlement and pre-emption.

*Second.* That the call in the certificate for the pre-emption to adjoin the settlement, was not so vague as to destroy the claim, or as to give no notice; but was considered as sufficient to give a right to the owner against an elder special entry, for all the land which could be covered by the pre-emption, when laid on three vacant sides of the settlement; the settlement itself being bounded on one side by the land of Wilson.

From this it appears manifest, that as the certificate did not say how the pre-emption was to adjoin the settlement, the court thought they had a right to apply, and that it was proper to apply some general rule to such certificates; and the rule so applied fixed, that they ought to be surveyed around the vacant sides of the settlement at equal distances; and also shows that when one certificate calls to adjoin the land granted by another, it means both settlement and pre-emption; and Isaacs' claim was decreed to be laid off in this manner as being the legal manner in which it ought to have been surveyed under his certificate.

Suppose, then, that there had been a claim of Fisher before the court, which had called, "to lie on both sides of Wilson's run and adjoining the lands of Isaacs below;" I ask how would the court have directed this claim to have been surveyed; if they had said it was the intention of this third certificate, and that it ought to adjoin the settlement only of Isaacs, it would have contradicted that part of the decree by which Isaacs was to adjoin the *lands* (both settlement and pre-emption) of Wilson; if it had said that the call in the certificate for the pre-emption to *adjoin* the settlement, "was not equally descriptive or of the same import as to include the settlement, or to adjoin it on all its sides," it would have contradicted that part of the decree, by which it was determined, that under that call Isaacs' pre-emption should include his settlement, and adjoin it on all its vacant sides. If it had said, that the call for the settlement to adjoin the pre-emption, "was too vague to have been regarded by the owner of the third certificate, or to bind him when he called for his claim to adjoin the lands of Isaacs," it would have contradicted that part of the decree by which it was determined, that such a call did give sufficient notice to, ought to have been regarded by, and did bind

Willis, who had no connection with Isaacs, so as to deprive him of the land which he held under a special entry; and, finally, it would have taken from Isaacs that land which the court had decreed to him as being contained in his claim in the suit with Willis who did not call to adjoin his land, and give it to Fisher who called to adjoin his land, because it ought not to have been included in it.

And it would have said in the suit with Willis, that Isaacs had a right to land, which in the suit with Fisher, it would have been declared that he had no claim to, from the uncertainty and vagueness of his certificate.

But if it had been determined in the second suit, that Fisher ought to have adjoined Isaacs' settlement and pre-emption, both the two decrees would have been consistent.

The only difference between the two certificates is, that Isaacs calls to include his improvement, but that only affected the shape of his settlement survey, but did not change the two important questions which are the same under both certificates; that under such a certificate the claim shall join both settlement and pre-emption; and that such certificate so far from being void as to the pre-emption from uncertainty, makes the claim certain to equal quantities of land on each side of the settlement.

*Fourth.* Therefore, the court is of opinion that Kenny intended to adjoin McGee's settlement, and that his location ought to be so taken.

If I have shown that the premises, on which the construction is founded, are bad, the conclusion must be so also, and the contrary inference must be drawn, that Kenny by his certificate intended to join both McGee's settlement and pre-emption.

But beside the general reasoning, which is properly applied on this question, the record contains the most undeniable evidence, that it was not Kenny's intention to adjoin McGee's settlement only.

Whitledge's, McGee's, and Kenny's certificates are all worded in the same way; the pre-emption to adjoin the settlement, both of them are elder than Kenny's, all having the same expressions must have the same meaning and construction.

· If then, Kenny, when he obtained his certificate, in which he called to adjoin McGee's land, means to adjoin McGee's settlement only, and paid no regard to his pre-emption, because it was so vague in its call to adjoin his settlement without saying how; how did it happen that he located his own pre-emption in the same

way; as McGee's certificate was for both settlement and pre-emption, when Kenny called to adjoin McGee's land, he must unquestionably have intended to join both, unless the objections as to the uncertainty of the call of the pre-emption occurred to him at the time, and induced him to call to adjoin the settlement only, upon the supposition that the defects in McGee's certificate would destroy his claim to his pre-emption. And if this objection did occur to him, and if he meant to join the settlement only in consequence of that objection; how did it happen, that he immediately located his own pre-emption in such a manner as he himself supposed would destroy his claim to it; no man unless he thought of such objections could intend to join the settlement only, instead of the settlement and pre-emption, when he called to adjoin McGee's land; and no man thinking of these objections, would immediately afterward locate his own pre-emption in the same fatal manner; therefore, until such contradictions can be reconciled, it must be considered, that his intention was to join both settlement and pre-emption.

But independent of this, there is on the record what I consider as a solemn confession by Kenny, that by McGee's certificate, he understood that his pre-emption was to be surveyed all round his settlement.

Whitledge's and Kenny's certificates as to the pre-emption, are in the same words, and Kenny after having stated in his bill, that Whitledge had surveyed contrary to his location, has his claim laid down in the survey returned in this suit, with his pre-emption all round, as the manner in which his claim ought to have been surveyed; and it is now contended by his counsel that he ought to have surveyed so.

Why ought the pre-emption to have been surveyed so? The pre-emption entry calls for a very different mode; it could only be for one reason, that as the pre-emption entry was younger than Kenny's claim, the pre-emption ought to have been surveyed agreeable to Whitledge's certificate, and therefore is a solemn confession by him, that he understood McGee's certificate which is in the same words, as conveying the same idea; and, therefore, must amount to a confession also, that he intended to adjoin McGee's settlement and pre-emption, and not his settlement only, and must satisfy every thinking mind that the objection now raised to his joining the pre-emption, is founded on this melancholy truth: that if he is to adjoin the settlement and pre-emption both, let him do

it either as he has surveyed, or as he ought to have surveyed, he can not get a foot of the land he now contends for; but it is a principle both of law and equity, that no man shall be allowed to contradict or disprove what he has once admitted on record.

And this court will never permit Kenny in the same suit and in the same breath to tell Whitledge, that he has surveyed wrong, because he has not joined his settlement all round, as he ought to have done by his certificate; and that he, Kenny, has a right to join McGee's settlement only, because his certificate, which is like Whitledge's, did not direct how his pre-emption ought to be laid off.

This opinion of the court, that Kenny intended to join the settlement only, must be founded on presumption only; that presumption is contrary to the words of his certificate, which calls to adjoin McGee's land, which consisted of both settlement and preemption, and is contrary to McGee's certificate also, which is for 1,400 acres, when he says it was his intention to join only 400 acres of McGee's land.

It has been determined by this court, that parol proof of intention, shall not be brought, even to support an entry, how, then, can a presumption of intention be made by the court without testimony, not only to destroy a certificate, but also contrary to the words of that certificate.

*Fifth.* Although Kenny's claim is youngest, it is better than ours, because his is a settlement, and ours a pre-emption; and because our pre-emption entry being younger than his certificate, it is no better than a treasury warrant.

Kenny can have no right if not on his location; if it was, where the settlement is best, the pre-emption should be so also.

This doctrine is entirely just here, because Kenny had no improvement of any kind.

Although the certificate of Kenny is elder than Whitledge's pre-emption entry, the pre-emption shall still take place of it as far as the square; but can not be enlarged to any thing out of the square, unless the pre-emption entry is the eldest. *Isaacs* v. *Willis* is in point, because Isaacs caveated on a pre-emption, not a settlement right, a claim on a military warrant entered prior to his settlement.

*Sixth.* It is a new idea, that by this call, he ought to adjoin both settlement and pre-emption.

I never have seen a man but what understands it so, and the

uniform manner of wording the certificates proves it, for otherwise every certificate which calls to adjoin the land obtained by a prior one, must interfere with it.

*Seventh.* McGee's right to the pre-emption notwithstanding the certificate was inchoate, and ought to be considered as in abeyance until he obtained his pre-emption warrant, and made his entry on it with the surveyor.

The party has made his election to have the pre-emption as soon as he gets the certificate for a settlement and pre-emption; and although the title is not completed, it is so far vested as to be transmissible either to heirs, assignees or devisees. See Cowper, 96-101, 348, 361-4; 4 Com. 165, 311; 2 Bac. Abr. 81, 2, 3, 661; Pow. on Cont. 401, 465; 3 Com. 415-20; Chan. Rev. 93; Durnford, 107.

Some subsequent act was necessary to be done respecting the settlement, as well as respecting the pre-emption. Chan. Rev. 95.

The condition was similar in both cases, but precedent in neither. 2 Bac. Abr. 665.

The right would be lost in either, by not doing the subsequent act, but when that subsequent act was done, it ought to have relation back to the date of the certificate, so as to make the title good from that time; 2 Ves. 70, 9; 2 Bac. Abr. 664-5; Burr, 818, 1033; Stra. 166.

His acceptance would have been presumed from the first, because it was for his benefit. Pow. Cont. 138; 9 Burr, 22, 37.

This is a question of construction depending on the intention of the party when he obtained his certificate; the party obtaining the certificate a hunter; the objection to the considering the pre-emption as included in the call of McGee's land is, that his claim to the pre-emption was then inchoate and in abeyance, terms of which the hunter never could have dreamed or heard, and therefore could not have affected his intention.

McGee, therefore, having such a right to the pre-emption under the certificate, it was his land; and, therefore, included in the description of Kenny's certificate when he calls to adjoin *his land.*

But admitting that he ought to have joined McGee's settlement only, I will inquire,

*Secondly.* In what manner ought Kenny's settlement to have been surveyed? Before this can be ascertained, it will be necessary to inquire how McGee ought to have surveyed his settlement; the certificate is "lying on Cooper's run about two miles above

Grotz' settlement, including his improvement." The settlement entry which is also prior to Kenny's certificate is, "lying on Cooper's run, about two miles above Grotz' settlement."

The facts state, that *a*, was McGee's improvement, and, that the water course which passes by Grotz' settlement or Edwards' spring, is *Cooper's run.*

Above Grotz' settlement some distance, the run forks, and it is not stated by the facts whether either, or which of those forks is called Cooper's run; but the one which goes through T. Whitledge's settlement is considerably the longest and largest, and therefore the presumption is, that if either is, that is called Cooper's run; but if nothing is to be presumed which is not stated as a fact, then it is Cooper's run only below the fork; place McGee, then, on Cooper's run, including his improvement, and how ought he to lie?

He is to be on the run, but is not to cross it, and the situation of his improvement at *a*, shows on which side of the run he is to be; therefore, he ought to have surveyed so as to lie on Cooper's run, below the fork, and so as also to include his improvement at *a*. It is obvious, that on a call to lie on a run, a creek or a river, the location will not entitle him to survey on both sides of it, and it is evident that Kenny who calls for McGee's certificate, understood it in this manner, for as he intended to lie on both sides of the run, he after having called to lie on Cooper's run, adds, "and to lie on both sides of said run," which he would not have done, if he had understood McGee's certificate as doing the same thing as it was worded.

Supposing that the branch which runs through T. Whitledge's claim is Cooper's run, the only difference it would make would be that McGee's settlement would be moved up above the fork, but still it must all be on the same side of the run and include the improvement at *a*.

Nay, even admitting that the branch which runs by *a*, is Cooper's run (of which there is neither proof or foundation to build a conjecture upon), McGee ought to have surveyed his claim altogether on the east side of that branch including his improvement at *a*, in a reasonable manner. Put either of these constructions on the call to lie on Cooper's run (and one of them must necessarily be adopted), and the manner in which the decree has directed McGee's settlement to be laid down, is evidently wrong; McGee's settlement ought to have been laid off so as to include the spring

at *a*, in the center of a square, without paying any regard to the call of laying on Cooper's run.

Although this manner of surveying would not make McGee touch Cooper's run at all, unless the smallest branch is that run, of which there is no proof; and admitting that to be the run, it throws a great part of the settlement on the west side of that run, although the whole of it ought to have been on the east side of it, admitting that to be the run.

McGee's settlement entry, which was prior to Kenny's certificate, leaves out altogether the call to include his improvement, by that means showing that the other call was considered as the most important, and therefore ought to have been disregarded in the decree. *Bryan* v. *Bradford.*

Place McGee, then, on the proper side of Cooper's run (let which will be it), and in a proper situation, and how ought Kenny to have surveyed from his call, "lying on Cooper's run below and adjoining McGee, and on both sides of the run?" From this location it is obvious that no part of Kenny's land ought to be higher up Cooper's run than any part of McGee's land. "It is to be below and adjoining McGee's land." But it also calls to be "on both sides of the said run;" and the decree has declared that from this call there ought to be an equal quantity of land contained in the survey on each side of the run. From this it is evident that he ought to adjoin McGee, so that his land may not be higher up the run in any part than McGee's; and that he may have an equal quantity of land on each side of the creek. But if you lay down McGee's settlement only as it ought to be, and then adjoin McGee's north boundary, part of Kenny's land will be higher up the creek than McGee's, and the whole of his land will be on one side of the creek instead of having it in equal parts on both sides of the creek.

But if Kenny joins his east and not his north boundary, then all his land will be below McGee's, and he may have an equal part on both sides of the run.

Again, the decree says "that the south boundary of Kenny's settlement ought to have run with the north boundary of McGee's, and with the course thereof."

Now admitting that the decree is right when it states that it was the intention of Kenny to join the settlement only of McGee, and that that is the proper construction to put on his certificate, I ask by what rule of construction it is that his settlement only is made to join the whole length of McGee's settlement line? His certificate

says he claimed a settlement and pre-emption joining McGee's land; the decree says it is the lower boundary of McGee's land called for in Kenny's location of his settlement and pre-emption with the commissioners; and in *Isaacs* v. *Willis*, Isaacs' settlement was directed to be surveyed so as to have Wilson's settlement corner nearly in the center of Isaacs' settlement line.

Kenny certainly knew his own intention of getting out a pre-emption warrant, etc., and although the uncertainty as to McGee's intention might keep him from paying due regard to his pre-emption right, that could not be the case as to his own; therefore, unless the court, after having said that Kenny, after having called to join 1,400 acres, shall only be obliged to join 400, will also add that when he calls to join the 400 with both settlement and pre-emption, he shall join it with the settlement only, that part of the decree must be changed.

Where the intention is doubtful, it may always be properly explained by the subsequent conduct of the parties; and the manner in which Kenny has surveyed shows what he considered as down the run.

Upon the whole I submit it to the court:

*First.* That from the real intention of Kenny when he obtained his certificate, from the legal construction of that certificate, and from the universal assent which all men have concurred in giving to that construction, the certificate ought to be construed to call to adjoin both settlement and pre-emption of McGee.

*Second.* That by paying a proper regard to the call in McGee's certificate, to lie on Cooper's run, his settlement ought to have been surveyed in a very different manner to what the decree directs it to be surveyed.

*Third.* That from the call in Kenny's certificate, "lying on Cooper's run, below and adjoining McGee's land, and on both sides of the run," that Kenny ought to have joined McGee's east, and not his north boundary; and

*Fourth.* That from the call in his certificate, he ought to join McGee with both settlement and pre-emption, and not with his settlement only; and therefore that there is error in the decree, and it ought to be reversed.

At the August term, in the said year, the following opinion and decree was given:

BY THE COURT.—The first error alleged in the decree which has been made in this cause is, that the court have given their opinion

that the complainant intended to adjoin McGee's settlement, whereas the call of the certificate of the complainant is to adjoin McGee's land, and the said McGee was entitled, at the time of granting the said certificate to the complainant, to a settlement of 400 acres of land and the pre-emption of 1,000 acres adjoining thereto, and have also decreed that his claim should be laid off agreeably to that opinion.

It now seems to the court that the opinion is erroneous in the following respect:

*First.* The complainant, in the location of his settlement, calls to adjoin McGee's land below; therefore it ought to adjoin that part of McGee's land which would lie lowest down the run, when properly laid off.

*Second.* The court grounded its opinion upon the supposition that McGee had located his pre-emption with the commissioners, and it was too vague to be regarded by a subsequent locator; whereas a pre-emption right of this kind was not required by the land law to be located with the commissioners, only the quantity of the pre-emption which the claimant elected adjacent to his settlement, was required to be noted in the certificate, and the claimant was left to locate it with the surveyor of the county within a certain limited time, to adjoin his settlement in any manner and legal form he should think proper. This now appearing to the court to be the true state of the case, a question of importance arises which was not decided on when the decree was made. What ought to be the effect of a location which was made to adjoin a pre-emption appendant on a settlement before it was located with the surveyor?

As such a pre-emption had a legal existence, and the subsequent locator had a right to appropriate the adjacent residuum of vacant land, which he could not otherwise have done with certainty of success, but by calling for the pre-emption or the pre-emption and settlement on which it was appendant, or by some mode of expression which was tantamount, the court is of opinion that a location thus made is legal, and that when the pre-emption is specially located with the surveyor, the location which calls to adjoin it by any mode of expression then also becomes special, more especially in the case of the complainant, who was only required to locate his settlement as particularly as it could be done at the time he obtained his certificate. It is also necessary to observe that McGee has located his pre-emption with the surveyor to adjoin his set-

tlement on the upper side, and the complainant having located his settlement to adjoin McGee's land below, it must be laid off to adjoin McGee's settlement for the reasons which have been now assigned, though not for the reasons assigned when the decree was made.

As to the second error alleged, which need not be recited, it still seems to the court, that when McGee's settlement is laid off conformably to the decree, the complainant's settlement ought also to be laid off conformably to it, inasmuch as the third fact indubitably fixes the name of Cooper's run to the water course below its forks, and the first fact, in connection with McGee's and the complainant's certificates, makes it evident that the forks near McGee's cave spring was by them taken for Cooper's run, and consequently that the complainant meant this fork as well as the main stream below the forks, when he called for Cooper's run; and further, that the complainant having located his settlement to adjoin McGee's land below, and to lie on both sides of Cooper's run, clearly fixes his settlement to the northern boundary of McGee's land, as the course of the stream is northwardly, and that boundary crosses the stream.

Therefore, it is decreed and ordered, that the said decree do stand unaltered and confirmed, except that part of the opinion which is contrary to the opinion now given. Order of survey, etc.

At the October term, in the same year, the defendant moved for another rehearing, upon the ground that the last decree was erroneous in points not contained in the first decree, whereby, unless a rehearing was now granted as to those errors, the advantage intended to be given the defendant by the rule of court would be lost to him.

The attorneys certified that they did verily believe there was error in the said decree, in the following instances:

*First.* That the decree had gone upon a supposition that the location of the pre-emption contained in the certificate was of no legal efficacy whatever.

*Second.* That the owner of the pre-emption was, notwithstanding his certificate, left to locate it with the surveyor, within a certain limited time, to adjoin his settlement in any manner or legal form he should think proper.

*Third.* That it was declared by the decree that an entry which calls to adjoin a settlement and pre-emption, or to adjoin a pre-emption only, which belongs to a settlement, is legal, whether that call is made in express terms or by such as are tantamount; and

yet the decree states that the legal situation of the claim thus calling for the settlement and pre-emption, or the pre-emption, must depend on the subsequent entry of the pre-emption with the surveyor; and that when the pre-emption is specially located with the surveyor, that the location which calls to adjoin it then also becomes special, and must adjoin it agreeably to the entry with the surveyor.

*Fourth.* Because the decree goes upon the supposition that the complainant located his settlement right, as particularly as it could be done at the time he obtained his certificate, and yet declares that his settlement shall be regulated by the subsequent entry of McGee, which places his pre-emption to adjoin his settlement in such a manner as was not called for in his certificate, and could not have been contemplated by either of the parties when the complainant obtained his certificate.

And the court directed the cause to be heard as to these errors now assigned at the next term, before which time the original jurisdiction of the court of appeals was taken away by the act establishing district courts and this cause was removed for trial upon the rehearing aforesaid to the district court, held at Paris.

And at the March term of the said court, in the year 1798, the following opinion and decree was given, to-wit:

In this cause the following questions arise:

*First.* Whether the complainant, from the spirit of his entry or the nature of the case, was bound to lay down the settlement and pre-emption of William McGee in a square, and then to adjoin the extreme limits of the 1,400 acres, or was at liberty to adjoin the settlement only?

*Second.* Where ought the lower boundary of William McGee's land, called for in the complainant's location of his settlement, to be fixed?

*Third.* In what manner ought the complainant's settlement to have been surveyed?

On the first question, as the claim of Kenny is of superior dignity to Whitledge's, it is necessary to ascertain the true and legal situation of Kenny's, and if we find that when his settlement is properly laid down he interferes with Whitledge's pre-emption, Kenny must have a decree in his favor for the interference. From the call in Kenny's entry to adjoin William McGee's land, it is necessary to inquire the precise import of that expression, under the circumstances attending settlement and pre-emption rights.

McGee had a claim to 1,400 acres of land, 400 of which he had fixed by his location. The remaining 1,000 acres of pre-emption right was to be located at his discretion, either adjoining his settlement, as a pre-emption, or distant from it, as a treasury warrant. He might locate it on any side of his settlement, in any legal form, and within the periods prescribed by law. From the nature of a settlement right it was stationary, and became an object from the granting of the certificate, to which a subsequent claim could with certainty be attached. But from the nature of a pre-emption claim, appendant on a settlement previous to its location with the surveyor, it was so much at the will of the owner that it could not be an object to which a subsequent claim could with tolerable certainty be attached. The owner of the settlement right was bound by law to describe his location with the commissioners. But the same necessity did not exist as to the pre-emption appendant on the settlement.

The usual entries made with the commissioners, as expressed in the certificate of settlement and pre-emption, do not amount to and can not be considered as locations of the pre-emptions appendant on settlements, but merely contain a memorandum of the quantity of land claimed by the pre-emptioner; as to such case it was not necessary to locate the pre-emption with the commissioners. No other person could be bound to take notice of a description which might be made or omitted at the pleasure of the party.

In confirmation of this doctrine, we find an opinion given by the former district court, in the case of *Swearingem* v. *Higgins.* Impressed with an opinion of the instability of a pre-emption appendant on a settlement before its location with the surveyor, we can not but think the call to adjoin such a pre-emption is equivocal. A man who calls to adjoin such a pre-emption, or even settlement and pre-emption, before the pre-emption is located, must depend on the caprice of the pre-emptioner; and although his entry may possibly be made special by the location of the pre-emption, still it may be destroyed by the consequences of that location. A distinction exists between a claim which is in itself stationary, and one which admits of transition, when they call to adjoin a pre-emption. In the first instance, the claim may be destroyed when the pre-emption is located; and in the second, it may be made special as far as regards subsequent claims, provided there are some other calls, such as to adjoin the pre-emption on the north, south, upper or lower side, etc. A distinction also exists between

the call to adjoin *land* and pre-emption. By the former a man may be at liberty to adjoin either the settlement or pre-emption, if located just as his own calls may require; but by the latter he must adjoin the pre-emption.

The second question in this cause is so intimately connected with and dependent on the first, that the only inquiry is, in what figure shall McGee's settlement be laid down? From McGee's entry, the court is of opinion that his settlement must be laid down in a square, with lines running to the cardinal points, and including the cave spring established by fact, the first in the center.

This position of McGee necessarily makes his north boundary the lowest down Cooper's run, as the said run crosses that line and returns no more into the survey.

The third question is, in what manner ought Kenny's settlement to have been surveyed? Agreeably to the position of McGee's settlement, as above laid down, Kenny was necessarily bound by his calls to make the northern boundary of McGee his base, and to extend down Cooper's run. With regard to the precise mode of surveying Kenny's settlement, as the different calls in his entry can be reconciled and carried into complete effect, it is the duty of the court so to do. The expression, "both sides of the said run," in themselves do not convey the positive idea of including the run in the middle of the survey. But in cases of this nature we are of necessity compelled to lay down some rules which will embrace a number of cases. On the present subject we shall do the least injury when we say that he who calls to extend the body of his survey up or down the creek, and on both sides of that creek, shall make his survey to contain equal quantities on each side, if in any wise practicable. Because if we permit him to vary to the extent the words would permit, he could cover from subsequent locators much more land than his warrant would justify. We at present say, he who does not describe the figure of his survey by some mode of expression, shall survey in a square. Also, he who calls to include a certain object, without further description, shall include that object in the center of a square. In both those cases it is the necessity of establishing some rule which induces courts to put that construction on words which in real strictness they do not mean, and in some instances will probably operate with rigor. But however desirous we may be to establish rules for the construction of entries, those rules must yield to circumstances.

16

For these reasons, therefore, and not for the reasons alleged in the decree of the court of appeals, this court doth adjudge, order and decree, that the surveyor do, etc.

At the July term of the said district court, in the said year, the surveyor having made his report, the final decree was entered, directing the defendant to convey, etc. From which decree the defendant appealed, and at the last term of the court of appeals the appeal was argued. .

NICHOLAS for the appellant.—After observing upon and applying the cases of *Consilla* v. *Briscoe*, and *Isaacs* v. *Willis*, as in his argument at the rehearing in this court, added:

This was the case of a village right, which could have no claim to any land to which any other person had by that act the right of pre-emption; but Whitledge held by that act the right of pre-emption to this land, therefore Kenny's certificate could give him no claim to it, and the district court erred in saying Kenny's was the superior claim.

So again, in saying McGee's settlement only was entered, when Kenny obtained his certificate, for the law considers what is contained in the certificate as a location, as well of the pre-emption as of the settlement.

"And where any such warrant shall not be entered and located with the county surveyor within the before mentioned space of twelve months, the right of pre-emption shall be forfeited, and the lands therein mentioned may be entered for by any other person holding another land warrant. But such pre-emption warrant may nevertheless be located upon any other waste and unappropriated lands, or upon the same lands where they have not in the mean time been entered for by some other." Chan. Rev. 92. Because it says the land mentioned in the pre-emption warrant shall be forfeited when the pre-emption warrant contains no location or description of the land, but refers to the certificate. Because it says the land therein mentioned may be entered for by another after that forfeiture. And because it says that such pre-emption warrant may, after the forfeiture, be entered on any other vacant land, or upon the same where they have not in the mean time been entered for by another. By this law the right of pre-emption to the land adjoining the settlement was preserved to the owner of the certificate for twelve months; if he did not enter his pre-emption warrant in that time, he forfeited his right of pre-emption. After the end of the twelve months, when his right was forfeited, any

person might enter for the land with any other land warrant. And after the end of twelve months the pre-emption warrant might be entered on any vacant land, or on the same, if no other person had entered for it, between the end of the year and the time of the application of the owner to enter it as waste land. Then this land could be taken by no other warrant for twelve months, and this warrant could take no other land for twelve months. If this is not the true construction of the law, great frauds might have been practiced by the owners of pre-emption warrants. The land office was open for the entry of treasury warrants in May, 1780; and the right to the pre-emption under the pre-emption warrant was not forfeited until July, 1780; therefore no person could enter a treasury warrant for this land until July, 1780; but the owner of the pre-emption warrant might, before May, 1780, have entered his pre-emption warrant on other vacant land, and at any time before July, 1780, and after the beginning of May, have entered a treasury warrant on the same land, and then withdrawn his pre-emption warrant and entered it adjoining his settlement, and he would by this means have covered both tracts, and thus have the pre-emption of 2,000 instead of 1,000 acres of land.

In this case Kenny's certificate was dated the 26th day of April, in the year 1780, which was before McGee's right of pre-emption was forfeited, and before any person could have entered for it as vacant land, and, therefore, when he calls to adjoin McGee's land he must have meant to adjoin his pre-emption as well as his settlement.

The district court was also mistaken in saying the pre-emption warrant might have been located on either side of his settlement in any legal form within the periods prescribed by law, because it has been determined that an entry with the surveyor, which changed the grounds, was good only against subsequent entries, not against prior ones; see Swearingem v. Higgins. And in Isaacs v. Willis it was determined that the certificate with the commissioners gave a right to all the land contained in the square of 1,400 acres.

The district court has said that "from the nature of a pre-emption claim appendant on a settlement, previous to its location with the surveyor, it was so much at the will of the owner that it could not be an object to which a subsequent claim could, with tolerable certainty, be attached."

This doctrine can not be law, for no right is so much at the will of its owner as to enable him to destroy the right of a third person. He may abandon or forfeit his own, but he can not affect the claims of others, and this is every day the case. For instance, an entry on a treasury warrant is forfeited because not surveyed in time, but no man ever supposed that an entry calling for it would, for that reason, be lost. The claim to the pre-emption was of such a nature as an existing claim (as the court in their last decree declared it to be), that it might be so described as to serve for the foundation of another claim; and the court have also said that any expression used in calling for it which is tantamount to the call for the pre-emption, and it admits that his land is so, makes the second entry a legal location. This is not only a legal location but also a precise and certain one.

If made after the entry of the pre-emption warrant with the surveyor, it depends on that entry. If before, it depends on the certificate with the commissioners, which gave the pre-emption a settled form. See the fifth rule of construction of the supreme court for the district of Kentucky. The reason of it applies—it would give to a pre-emption calling only "to adjoin the settlement" an equal quantity of land on each side of the settlement.

The district court has said also, that no location of the pre-emption appendant on a settlement which the commissioners was required, but merely a memorandum of the quantity of land claimed by the pre-emptioner. Entered, or located, are used in the law as synonymous terms.

The law only requires that the owner of a pre-emption warrant shall enter it with the surveyor; that gives it no greater specialty than the pre-emption warrant itself contains.

The entry with the surveyor may be thus made: 1,000 acres to adjoin the settlement, and that is what the law has provided, for it gives the right only to adjoin the settlement.

That the pre-emption is considered as located with the commissioners is apparent from the following expressions of the law: it provides that those obtaining pre-emptions on account of settlement should, at the time, "fix the quantity so as not *to interfere with the just right of others.*"

This could not be done without locating it.

It also provides that "the clerk shall enter the names of those to whom the right of pre-emption is adjudged, with their quantities and locations." Again, it says the right of pre-emption shall be

forfeited and the lands mentioned therein, etc. "Or, upon the same lands where," etc. These declarations of the law, when properly examined, will be found to require, and amount to a location of the pre-emption, as much as others in the law do as to the settlement right. If this doctrine is right, another legal consequence follows from it, that all entries made with the surveyor on pre-emption warrants, which are made in the same words as the certificate, to-wit : " to adjoin the settlement," are void also. And it is well known there are thousands of pre-emptions in this situation.

This is also one of the strongest evidences of the intention of the call "to adjoin" in the certificate; if it had no meaning it would not have been used in the entry with the surveyor, and if it had a precise meaning in the entry the same words must have the same effect in the certificate. If it had a precise meaning in neither, and it was right and necessary for the court to apply a general rule to the construction of such a call in the entry with the surveyor, it was as right and necessary to apply the same rule to the construction of the same call in the certificate with the commissioners.

That clause in the 5th section, which says, where any such warrant shall not be entered and located with the county surveyor within the before mentioned space of twelve months, the right of pre-emption shall, etc., is conclusive. Because *first*, it proves that some particular land was bound by that warrant, and then it could only be by the certificate; and, *secondly*, as it secures that land for twelve months to the owner, and therefore although he might, after twelve months, relinquish it, it might, with strict propriety, be called his during those twelve months, and before he had actually relinquished it, which was the case when Kenny called for McGee's land. The argument drawn from the right of the owner of a pre-emption warrant to re-enter it on vacant land, proves nothing, because the owner of a treasury warrant had the same right, and without the same limitation, but yet, when he did withdraw, it did not affect an entry calling for his first location. But the law proves that the pre-emption claim must be considered as so far stationary for twelve months, at least, that it must, for that time, be considered as adjoining the settlement, and can never be fixed on any distinct ground, unless it is by an entry specially calling for other ground, and made after the expiration of the twelve months.

The district court has also said that, " as in such cases it was not necessary to locate the pre-emption with the commissioners, no other could be bound to take notice of a description which might be made or omitted at the pleasure of the party," etc.

This can not be law upon the court's own principles, for admitting they were not bound to locate their pre-emptions with the commissioners; yet, if they did do it, it would be binding on them, it would be notice to others by which they might and must be bound.

A has his election of two tracts of land for twelve months, and makes that election the first day, then B, who had second choice, takes what A had left out. Is not A bound, and B's choice good?

Some of the certificates granted by the commissioners do contain a special location of the pre-emption. Suppose one called to adjoin the settlement on the west, could the owner of the pre-emption warrant afterward enter it to adjoin the settlement on the east so as to affect prior entries? He could not. If he could not in the case of a location with the commissioners, which was certain in itself, how could he do it in the case of a location with the commissioners, which the law makes certain, by an application to it of a general rule of construction; for those locations which require the application of the general rule are equally as good and efficacious as those entries which are certain and explicit in themselves.

Even supposing that the owner of the pre-emption might afterward change the location with the commissioners, yet, until he actually did this, the location contained in the certificate would be a sufficient description to answer the call of *his land;* and McGee's pre-emption entry being subsequent to Kenny's certificate, Kenny was bound by that location if McGee was not.

The case of *Swearingem* v. *Higgins* is so far from justifying the opinion of the court that it proves it to be wrong, because it shows expressly that the owner of a pre-emption warrant had a right to particular land, under his location with the commissioners, although it guards against his monopolizing too much land under that certificate.

Again, the district court has said, that " a man who calls to adjoin such a pre-emption, or even a settlement and pre-emption before the pre-emption is located, must depend on the caprice of the pre-emptioner, and although this entry may be possibly made special by the location of the pre-emption, still it may be destroyed by the consequences of that location."

No man's right depends on the caprice of another, but yet, if this doctrine is right, the claim calling for the pre-emption not only depends on the owner of the pre-emption for its locality, but also for its very existence; for, if he does not make an entry on his pre-emption warrant, and his certificate contains no location at all, the claim calling for the pre-emption must sink altogether.

Is it possible that there could, under the land law, exist a claim which, by the act of a third person, done years after the date of the entry, could be legally fixed any where between the most opposite boundaries of the state? It must therefore follow that a subsequent location of the pre-emption warrant with the surveyor could neither make a prior location calling for it more special or destroy it. Neither of the cases stated by the court are law. In the first, the call to adjoin the pre-emption would be rejected, if it could not retain its fixed position and adjoin the pre-emption; and, in the second, it must be good or bad at the time of making the entry; and its particular situation must depend on the legal position of the pre-emption at the time it called to adjoin it; although that legal position might be changed afterward by the owner so as to be good against subsequent, but not against prior, locations. No such distinction exists, either in reason or law, as the district court has supposed, and this court has said expressly, in its last decree, that any expression which is tantamount is sufficient, and admitted that the call for *his land* is tantamount.

The doctrine of the district court as to applying a general rule, in order to ascertain the manner in which Kenny ought to have surveyed, when applied to the case of the location of the pre-emption warrant with the commissioners, does away the whole of the reasoning contained in the court's decree.

This decree is made upon the same grounds the first decree in this court was made, which the court have said at the rehearing were erroneous, and which are such as they will not now sanction, and it is absolutely contradicted by the last decree of this court.

And now, at this term, the following decree was pronounced:

BY THE COURT.—This cause was first heard, and an interlocutory decree given therein in favor of Kenny, by this court, while it had original jurisdiction, which decree, although interlocutory, was final as to the merits of the cause, except so far as they were kept open by certain errors alleged on behalf of Whitledge, agreeably to the then existing rules of the court.

On the errors thus assigned the cause was reheard by the same court, and a second interlocutory decree given in favor of Kenny, or rather the interlocutory decree before given was affirmed, but on different principles, which was also final as to the merits of the cause, except so far as they were kept open, by certain other errors, in like manner alleged, on behalf of Whitledge. Shortly afterward the original jurisdiction of this court was taken away, and in consequence thereof the cause was removed to the court of the district of Paris, where it was reheard on the second set of errors assigned, and first an interlocutory and then a final decree given in favor of Kenny on principles different from both the former decrees, and from which the present appeal hath been taken, so that it now becomes the duty of this court carefully to aim at a final decision therein, which will be conformable to law, however contrary it may be to former opinions in the cause.

From what hath been stated, it is evident, that the district court of Paris was restricted to the errors which brought the cause before it, and consequently that, on a consideration of those errors only, the appeal from the decree of that court ought to be decided.

Whatever was determined in the cause by the former decrees of this court, against which those errors do not militate, must stand unaltered, although otherwise erroneous.

This court will not attempt to re-investigate the merits of the cause at large, further than it may be necessary in deciding on the errors. It is, however believed, that all the other points which arose in the cause, have been properly adjudged and stated.

The first error assigned is, that the decree hath gone on a supposition that the location of the pre-emption, as contained in the certificate, is of no legal efficacy whatever. The court can not discover that this assertion is authorized by the decree.

The decree states that a pre-emption appendant to a settlement was not required by the land law to be located with the commissioners, only the quantity of the pre-emption which the claimant elected, adjacent to his settlement, being required to be noted in the certificate, which can mean no more than that the noting alluded to will not have the effect of fixing to what point, and in what form the pre-emption shall adjoin the settlement, but it might have the effect which is clearly implied and properly expressed in the decree, of securing to the claimant the privileges of procuring a pre-emption warrant, and of locating it with the surveyor within a certain limited time to adjoin his settlement on

Whitledge *v.* Kenny.

any part, and in any form he should think proper, without re-ducing the dignity of the claim. To this latter opinion of the court the second error alleged appears to be opposed, viz:

That the decree asserts that the owner of the pre-emption is, notwithstanding his certificate, left to locate it with the surveyor, within a certain limited time to adjoin his settlement in any manner, or legal form, he should think proper. Perhaps this, and the first error assigned, might, with propriety, have been com-prised in one; at least, it seems that they may fairly be taken together in considering them. And on those supposed errors two inquiries arise: *First.* Does the land law require that a pre-emp-tion, appendant to a settlement, should be so located with the com-missioners as to fix on what part, and in what form the pre-emp-tion shall adjoin the settlement?

It may here be premised that the land law, in a clause of the 5th section of the act for adjusting and settling the titles of claim-ers to unpatented lands, etc., secured the privilege of those who were entitled to claim settlement rights (which were not to exceed 400 acres), that they might also become entitled to the pre-emption of any greater quantity of vacant land adjoining to that allowed them in consideration of settlement, not exceeding 1,000 acres.

Here the law determined that the pre-emption shall adjoin the settlement without specifying the manner; but the clause on which the answer to the present inquiry seems principally to de-pend is in the 8th section of the same act, viz: " The commission-ers shall deliver to every person to whom they shall adjudge lands for settlement, a certificate thereof, under their hands and attested by the clerk, mentioning the number of acres and the time of set-tlement, and describing, as near as may be, the particular location, noting also therein the quantity of adjacent land to which such person shall have the right of pre-emption."

The court does not conceive that any commentary can make the meaning of this clause more clear, and it seems to the court that it does as clearly answer the present inquiry in the negative.

It may, however, be observed, that with regard to a settlement three things were required to be done by the claimant when he came before the commissioners to prove his right: to elect the quantity, and to specify the location, and that with regard to the pre-emption appendant thereto, it was only requisite he should elect the quantity, the law having directed that the quantity elected should adjoin the settlement, and that it should be so noted in the certificate.

If it were his duty to have offered a particular location for his pre-emption as well as his settlement, it is strange that the duty was not also enjoined on him in the same words, and it is strange that, in the clause next following, particular locations with the commissioners should be expressly required for the other kinds of pre-emptions.

It may also be observed, that it can not legally be inferred that this was a *casus omissus*, either from the words "*like manner*" in the clause last recited, or from a preceding clause in the same section which requires that the clerk shall keep exact minutes of all the proceedings of the commissioners, and enter the names of all the persons to whom either lands for settlement, or the right of pre-emption, as the case is, shall be adjudged, with their respective quantities and locations.

The words "*like manner*," can not allude to the pre-emptions intended in the preceding clause, because that clause had not required locations for such pre-emptions; therefore, such an inference would be begging the question.

And as to the clause last recited, which specifies the duty of the clerk, it certainly was necessary for him to have recourse to the other parts of the land law to learn what kind of locations he was directed to enter for each kind of claim allowed by the commissioners. This clause, therefore, can mean no more than that each of them should be inserted in his minutes in the same words as in the certificates issued to the claimants.

Nor can it be presumed that the legislature intended by the expression "*adjoining*," that the claimants of such pre-emptions should be confined to take them all around their settlements, because the words "*adjoining*" and "*around*" are not synonymous, and because the pre-emption is destroyed by another, which appears much more rational, that it was foreseen by the legislature, if particular locations for them should be required before all the superior claims were ascertained by the commissioners, the right of claiming them would be rendered nearly nugatory; and this by the way seems to be a sufficient reason, if it were necessary to give one, why the land law required that there should be a particular location for a settlement, and not for a pre-emption appendant thereto; and it may be further observed, that if particular locations for this kind of pre-emptions were not made necessary by the land law, nor by it required to be made with the commissioners, that none of the rules of court for the construction

of locations, which have been or may hereafter be adopted, can possibly apply to the case; and that it would be the most unjustifiable assumption of legislative power for the court to declare that to be law which does not exist, or that to be the act of a person which he never did nor was required to do.

If it should be objected that the opinion of the court now given contradicts the decision of the late supreme court in the case of *Swearingem* v. *Higgins*, it will be necessary to observe that a complete file of the papers in that cause hath not been preserved; but if the judgment thereon was founded on a supposition that a pre-emption appendant to a settlement was required to be particularly located with the commissioners, the supposition seems to be too illegal and pernicious to be followed as a precedent, and it was virtually adjudged to be so in the last of the former opinions of the court of appeals in this cause.

The second inquiry arising on the errors alleged which have been recited now presents itself for consideration. Did the land law permit a warrant obtained on a pre-emption right appendant to a settlement to be located with the surveyor within a certain limited time, so as to adjoin the settlement on any part and in any form the claimant thought proper, without destroying the dignity of his claim?

In the fifth section of the act before cited, it is required that all pre-emption warrants shall be entered with the surveyor within twelve months next after the end of the session of assembly at which the act passed.

This clause limits the time as to its termination, within which such warrants should be located. And in the same section it further proceeded, that the register of the land office shall particularly distinguish all pre-emption warrants by him issued, and no county surveyor shall admit any such warrant to be entered or located in his books before the expiration of ten months after the end of the said session; and where any such warrant shall not be entered and located with the county surveyor, within the before mentioned space of twelve months, the right of pre-emption shall be forfeited, and the lands therein mentioned may be entered for by any person holding another land warrant.

But such pre-emption warrant may nevertheless be located on any other waste and unappropriated lands, or upon the same lands where they have not in the mean time been entered for by some other?

This last regulation contains a limitation as to the commencement of the time within which such warrants might be located as such; and it further provides, that if they were not located within the period proscribed, the right of pre-emption should be forfeited, which, taken in connection with the other parts of the land law before cited, proves, without further comment, that the right of pre-emption to any vacant lands adjoining the settlement to which it was appendant was so long secured, and consequently that the claimant might have made his location thereon in the manner most for his interest; moreover, this clause provides that a pre-emption warrant, after it lost its dignity, might have been located on any vacant lands in any manner the owner pleased.

Surely, then, the owner of a pre-emption warrant of the kind under consideration must have been permitted, within the time prescribed to locate it, to adjoin his settlement in any manner he pleased, or his right of pre-emption could not have been beneficial to him; to which may be added, that this doctrine hath ever been embraced as undoubtedly true, unless the case of *Swearingem* v. *Higgins* should be found to be an exception, which it is believed it is not.

If it should be objected that the clause last recited from the land law, equally applies to those pre-emptions which were expressly required to be located with the commissioners, the answer would be, that on all pre-emptions a more perfect location was required with the surveyors than with the commissioners; with the latter, some of them indeed were to be located as particularly as it would be done at the time with the former; they were all to be located so specially and precisely as that others might be enabled with certainty to locate warrants on the adjacent residuum.

From which it is evident that a much greater degree of precision was necessary in one case than in the other, and that to make them consistent, the last location must be considered as an amendment, without destroying the dignity of the claim, if it did not materially depart from the first.

Then, as to those pre-emptions which were only noted by the commissioners to adjoin the settlement to which they were appendant, there seems to be no doubt but that their locations with the surveyors might have been made as hath been stated. Nor does the court find any clause in the land law which can give the least plausibility to such a doubt, but one which is an act of the May session, 1783, which allows further time for making

Whitledge *v.* Kenny.

entries upon certificates for settlement rights, and for locating warrants on pre-emption rights, as specially described in the certificates by which such rights are held.

But as it does not appear that this clause was intended to explain or to declare the meaning of any preceding part of that law, but simply to extend a privilege thereby given, it certainly ought to be construed in conformity thereto; or, to say the most, that it was intended thereafter to continue as to time, and to limit as to extend a privilege which had been before given; and, taken in either of the last mentioned ways, it does not affect the case under consideration.

The two errors alleged, which remain to be decided on, may also be taken together, as it seems to the court that every consideration which will apply to one will apply to the other. They are as followeth :

*Error* 3.—That it is declared by the decree, that an entry which calls to adjoin a settlement and pre-emption, or to adjoin a pre-emption only which belongs to a settlement, is legal, whether the call is made in express terms, or by such as are tantamount, and yet the decree states that the legal situation of the claim thus calling for the settlement and pre-emption, or the pre-emption, must depend on the subsequent entry of the pre-emption with the surveyor, and that when the pre-emption is specially located with the surveyor, that the location which calls to adjoin it then also becomes special, and must adjoin it agreeably to the entry with the surveyor.

*Error* 4.—Because the decree goes upon the supposition that the complainant located his settlement right as particularly as it could be done at the time he obtained his certificate, and yet declares that his settlement shall be regulated by the subsequent entry of McGee, which places his pre-emption to adjoin his settlement in such a manner as was not called for in his certificate, and could not have been contemplated by either of the parties when the complainant obtained his certificate. It ought here to be premised that the court of appeals, in that part of its former decree to which these alleged errors are opposed, has improperly extended its opinion further than the case under consideration required.

A certain William McGee had been allowed a settlement of 400 acres and a pre-emption of 1,000 acres adjoining thereto, and obtained a certificate from the commissioners, which contained a location for the settlement and also the usual note as to the pre-emption.

Kenny, the complainant in the original suit, and the appellee in this, afterward was allowed a settlement of 400 acres, and a pre-emption of 1,000 acres adjoining thereto, for raising a crop of corn in the country, and obtained a certificate from the commissioners, in which his settlement was located below and adjoining McGee's land, before McGee had located his pre-emption with the surveyor.

From that decree it appears that the court was of opinion that the call to adjoin McGee's land was tantamount to calling for his settlement and pre-emption, which seems to be a just construction. But it was not necessary then to decide on a location, which only called to adjoin a pre-emption appendant to a settlement; therefore, to the legal effects of a location with the commissioners for a settlement right allowed to a villager, which only calls to adjoin a settlement and pre-emption on a certain part, or side, previously allowed by the commissioners, but before the pre-emption had been located with the surveyor, it appears that the opinion of the court ought to have been confined, and for the same reason to the same inquiry the court will now confine its attention.

It will not be denied that when a location on a land warrant calls for a location made on another land warrant, if the first location be such as the land law required, the second will have the benefit of that call, and by parity of reasoning, it would seem that when a certificate for a settlement calls for another settlement and pre-emption, if the certificate for the first contains such a description as the land law required, the second can not for that cause be illegal.

For the different degrees of precision which were enjoined in the two cases do not justify different conclusions; the law having been complied with in the one case, ought to have the same effect as in the other.

The only doubt which can arise is, whether a location of the kind last mentioned was as particular as it might have been made. But when it is considered that the pre-emption appendant to an actual settlement will take preference of every pre-emption appendant to subsequent actual settlements, and that a pre-emption appendant to any actual settlement will take preference of every settlement allowed to villagers, and of the pre-emptions appendant thereto; and that the prior settlements and pre-emptions allowed to villagers will take preference of every subsequent settlement of that kind, and of the pre-emptions appendant thereto; and

further, that all such superior settlements and pre-emptions must have been specially located with the surveyors, before the fate of the settlements and pre-emptions in their vicinity, which were inferior to them, could be known.

It seems to the court that when a villager located his settlement to adjoin on a certain part, or side, of a settlement and pre-emption which had been previously ascertained by the commissioners, that he described as near as may be his particular location; and, therefore, that in this point of view also, his location ought to be sustained.

If it should still be thought that there is any uncertainty in the land law as to the present inquiry, it seems that justice will strongly favor the explanation which has been given it by the court; for, if the locations made to adjoin settlements and pre-emptions before their precise situation and form were ascertained are not legal, their owners might have monopolized all the vacant land within several miles of their settlements, by determining in their own minds how they would locate their pre-emptions with the surveyors, and at their leisure locating other warrants on the remainder; whereas, nothing can be more clear than that reason required, and the legislature intended, that all purchasers of land warrants should be on the same footing.

Therefore, it seems to the court to be the most consonant to the equity arising on the case, as well as the general tenor of the land law, that the locations of settlements allowed to villagers, which have been made to adjoin other settlements and pre-emptions, should be considered as on that account sufficiently particular. That when they were afterward specially located with the survey-ors, then the locations made to adjoin them, as in the case of the appellees, also became special; and that the specialty of the latter related back to the time they were made with the same propriety as the former did to the time those rights were ascertained by the commissioners, for it is clear that the former will relate back, and *ubi eadem est ratio ibi, idem est jus.*

If it should be objected that this doctrine greatly extends the uncertainty, which, in other instances, is produced by the land law, the answer will be, that if it be the law which produces those mischiefs, the court is not responsible for them, and it can not be denied that there are defects in the land law which are beyond the power of construction to remedy. But the mischief now in contemplation would have been small, had it not been for the

Whitledge *v.* Kenny.

great length of time, which, by repeated amendments to that law, was given to the claimants of such pre-emptions to locate them specially with the surveyor; for, by the original law, they were required to be thus located within a few months after they were allowed by the commissioners, and in the meantime, and for more than two years thereafter, such was the situation of the commissioners' books, that there was no certain or legal way of obtaining information of any of the claims recorded in them, so that adventurers were at first subjected to no greater difficulties with regard to such pre-emptions than the other claims for which more particular locations with the commissioners had been made.

It may not be amiss for the court to repeat, that it hath strictly confined the present investigation to the locations with the commissioners of settlements allowed to villagers, which called to adjoin settlements and pre-emptions before the pre-emptions were located with the surveyors, because the location of the appellee in question is of this kind, and it is not necessary that the decision should be further extended, and because it seems to the court that the case of those villagers was peculiar when they made such locations, of which there are many to be found in the commissioners' books.

All the other claimants had improvements, which, in a great measure, identified and secured the claims.

But before it was possible for villagers to know the precise forms which those claims would assume, they were compelled either to make random locations for lands before unappropriated, amid a crowd of such claims, or to abandon the privilege which the law allowed them.

In short, villagers had purchased a right to appropriate the vacant lands which should be left after those claims were satisfied, and it was impossible to do so without calling to adjoin them.

For the reasons which have been stated, the court adjudged that the errors under consideration are without foundation so far as they respect the merits of the present cause, and therefore that the decree of the court for the district of Paris thereon, which is in substance the same with the former decree of this court, is just, and should stand unaltered.

As to the different opinions by which those decrees were supported by the court of appeals or the district court, it is only necessary to mention that so far as they contradict the opinion now given they can have no further authority.

Decree of the Paris district court confirmed with costs.